Filed 6/13/16  In re R.F. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re R.F., et al., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARIA S.,<br><br>        Defendant and Appellant. | A144952<br><br>(Sonoma County<br>Super. Ct. Nos. 4228-DEP, 4229-DEP) |

Three children of Maria S. (Mother) were detained after Mother and her domestic partner (Father), the presumed father of the two younger children, were found to be living in a filthy home and failing properly to supervise the children as a result of the parents' drug abuse.  The parents also had a history of domestic violence.  During the year-long reunification period, both parents failed to participate successfully in drug treatment programs, and reunification services were terminated.

Immediately prior to the permanency planning hearing (Welf. & Inst. Code,[1] § 366.26), Mother filed a section 388 petition requesting return of the children to her custody, arguing she had been drug-free for over a year.  In the alternative, she resisted their adoption, contending the juvenile court should select guardianship under the "beneficial relationship" exception.  (§ 366.26, subd. (c)(1)(B)(i).)  The juvenile court

---

[1] All statutory references are to the Welfare and Institutions Code.

denied Mother's section 388 petition and entered a plan of adoption. Finding no abuse of discretion, we affirm.

## I. BACKGROUND

In June 2013, the Sonoma County Human Services Department (Agency) filed dependency petitions in connection with Mother's three children, L.F., a 14-year-old girl, R.F., a 10-year-old boy, and J.F., a four-year-old boy.[2] The petitions alleged Mother had failed to provide adequate care, supervision, and a safe living environment due to her substance abuse. It was also alleged that Mother and Father engaged in domestic violence. (§ 300, subds. (b), (c).)

The jurisdictional and dispositional report stated that Mother and the children lived in an unkempt, filthy home with little or no food and no gas service and in which "multiple family members" smoked marijuana and used methamphetamines. The report claimed Mother had left the boys in the care of their 14-year-old sister for days at a time, Mother and Father were regular users of methamphetamine, and on repeated occasions Father had assaulted Mother while the children were at home. In speaking to the Agency, Mother denied most of the allegations, although she acknowledged Father's violence. The juvenile court found the jurisdictional allegations true and declared the children wards of the court.

Prior to the 12-month review hearing, scheduled for July 2014, the Agency reported that following the children's detention, Mother had twice entered residential drug treatment programs without completing them. The Agency had since been unable to contact her. Father admitted to having relapsed into drug abuse after a period of sobriety. At the time of the report, the parents were still living together, although both acknowledged that Father's drug abuse threatened Mother's sobriety. Both parents had regularly attended weekly visitation with the boys, but the Agency reported they had difficulty "creat[ing] structure and discipline" for the boys and relied on staff to maintain

_____

[2] The present appeal concerns the two boys. We will discuss L.F. only as necessary to explain the boys' circumstances.

2

discipline.  The Agency recommended the court terminate reunification services and schedule a section 366.26 permanency planning hearing, based on the parents' "evident pattern of inconsistency and lack of commitment" in participating in reunification services, particularly drug abuse treatment.

In an October 2014 order, the juvenile court, following a contested hearing, terminated services and scheduled a permanency planning hearing for the boys.  This court affirmed that decision on the merits in denying Mother's petition for an extraordinary writ.  (*Maria S. v. Superior Court* (Jan. 14, 2015, A143380) [nonpub. opn.].)

In a report filed on January 27, 2015, prior to the section 366.26 hearing, the Agency reported the parents' visitation had been decreased to semimonthly after the termination of services and to monthly on or around January 6, 2015.  The parents had faithfully continued to attend visits, but they struggled to engage the boys and entertained them with cell phone games.  The boys had been placed together in a prospective adoptive home and were doing reasonably well.  They had bonded with the members of their prospective family and expressed no distress at the prospect of adoption.

In anticipation of the section 366.26 hearing, Mother filed a petition under section 388 to modify the court's earlier order and return the boys to her custody. Attachments to the petition demonstrated that Mother and Father were actively involved in a church.  Mother had been participating in an outpatient drug abuse treatment program for seven months and claimed to have been drug-free for a year, and she was receiving weekly individual therapy.  Mother's psychotherapist believed that because of her dedication, Mother was "less likely to relapse than most of my past clients."[3]  There was no indication, however, that Father had addressed his own admitted relapse into drug use.

---

[3] The petition contained no independent confirmation of Mother's claim of sobriety.  A letter from the drug treatment program submitted with the petition stated only that she was participating in group sessions and "appear[ed] to be making good progress toward sustained abstinence."

3

The motion also attached copies of notes from the "visit monitors" for eight of the parents' visits with the boys during October 2014 through January 2015. The notes provided a different impression of the visits than the characterization in the Agency report. The monitors observed extensive interaction among family members, finding the parents engaged, attentive, and affectionate with the children. The parents played games and sports with the boys, talked, and had generally busy, cheerful meetings. Although the boys did not always behave, the monitors generally reported not having to intervene. There was only one reference to excessive use of a cell phone, and there was no indication the parents struggled to engage the boys.

At the hearing on March 9, 2015, Mother testified she had been sober since March 1, 2014, over a year a prior. She acknowledged having failed to attend scheduled Agency drug testing from June through September of that year, although she claimed to have appeared for equivalent testing. Mother said she had also begun taking prescription antidepressant medication, which alleviated her depression. Mother characterized her visits with the boys as successful. Mother said she was able to handle all behavioral issues that arose during the visits. She believed she had "maintained a bond" with the boys throughout the proceedings, based on the boys' frequent expressions of affection.

Mother acknowledged she continued to live with Father, who was not in a treatment program. Mother characterized Father's domestic violence as "more shouting" than violence and blamed it on Father's drug use. Neither parent was then participating in domestic violence counseling, although they had in the past.

The boys' social worker also testified. Asked about the bond between Mother and the boys, the social worker said relations between the parents and the boys were "okay" and "cordial," but "I have not seen much beyond that." The social worker, who had only observed two visits, said there was little interaction between the boys and the parents, who struggled to engage the boys in conversation. R.F. was reserved, barely spoke to them, and was reluctant to leave the car to begin the visits, and both boys defied the parents' directions. They did not seem to regret leaving at the end of visits.

4

The juvenile court denied Mother's section 388 petition, terminated parental rights, and ordered the boys' adoption, finding insufficient evidence to support the "beneficial relationship" exception.

## II.  DISCUSSION

Mother appeals the juvenile court's decision, contending the court abused its discretion in denying the section 388 petition and declining to find a beneficial relationship between her and the boys.

### A.  *Mother's Section 388 Petition*

The purpose of the child dependency laws is to protect abused and neglected children and to provide them permanent, stable homes.  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 (*Marilyn H.*).)  After a child has been removed from the custody of his or her natural parents under this system, the initial focus is on reuniting children and parents through the provision of services designed to correct the problems that led to the dependency proceeding.  (*Id.* at p. 304.)  After a statutorily prescribed time dependent upon the age of the child (§ 361.5, subd. (a)), the juvenile court must make provision for the permanent care of the child (§ 366.21, subd. (f)).  At this point, the court's focus shifts from reunification to the child's need for permanency and stability, and the court must schedule a hearing under section 366.26, at which a plan for permanent care is chosen.  (*Marilyn H.*, at pp. 304, 309.)  If the natural parents have been unsuccessful at reunification, this may entail permanent removal of the children from their home.  (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.)

Throughout a dependency proceeding, section 388 grants parents the right to petition for the modification of any court order on the basis of changed circumstances or new evidence.  (*Marilyn H., supra,* 5 Cal.4th at pp. 308–309.)  "[R]eunification pursuant to section 388 must remain a viable possibility even after the formal termination of reunification services . . . if there is . . . a 'legitimate change of circumstances.' " (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 (*Kimberly F.*); see similarly *In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)  Under section 388, however, the burden of proof is on the petitioner to demonstrate by a preponderance of the evidence that the proposed

modification is in the child's best interests. (*Jasmon O.*, at p. 415.) The petition "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*Ibid.*)

The court in *Kimberly F.* established an analytical framework for evaluating a section 388 petition seeking to modify an order terminating reunification services. As that decision describes in more detail, the juvenile court should weigh (1) the seriousness of the problem which led to the dependency and the reason for any continuation of that problem or, alternatively, the reason the problem was not overcome prior to the section 366.26 hearing; (2) the strength of the relative bonds between the dependent child and *both* parents and caretakers, which in turn is affected by the length of time the child has been in the dependency system; and (3) the degree to which the original problem may be easily removed or ameliorated, and the degree to which it actually has been. (*Kimberly F., supra*, 56 Cal.App.4th at pp. 530–532.) "While this list is not meant to be exhaustive, it does provide a reasoned and principled basis on which to evaluate a section 388 motion." (*Id.* at p. 532.) While the *Kimberly F.* factors have been criticized as failing to give sufficient weight to the child's need for permanency and stability at this stage of a dependency proceeding (see *In re J.C.* (2014) 226 Cal.App.4th 503, 526–527), they are a good starting point for analysis.

We find no abuse of discretion in the juvenile court's conclusion Mother failed to demonstrate a sufficient change of circumstances so that their return to her was in the boys' best interests. Mother argues the section 388 petition demonstrated she had "cleared up the deficiencies in her case plan" by maintaining sobriety for a year, continuing to engage in individual therapy, and maintaining consistent visitation. The argument fails to acknowledge the full scope of the factors leading to the boys' detention: drug abuse by both parents that led to wholly inadequate parenting and domestic violence between them that threatened the boys' safety. Mother's testimony suggested she had provisionally overcome one of these factors, her own drug abuse. Her claim of a year's sobriety, however, was not particularly credible. During the time she claimed to be sober, she dropped out of two treatment programs and failed to appear for scheduled drug

6

testing for several months.  The juvenile court could reasonably have concluded her period of sobriety was significantly shorter than the claimed year.  Yet even if Mother's claim was accepted at face value, two obstacles remained.  First, Mother continued to live with Father, who was not reported to have ceased his admitted drug abuse.  As both acknowledged, Father's continued drug abuse in the household posed a continuing threat to Mother's sobriety.  Second, Mother and Father had done little to address the risk of domestic violence between them.  In her testimony, Mother had minimized the nature of the violence as "shouting," rather than confronting it honestly.  Neither parent was actively involved in domestic violence counseling.  Given the couple's continued cohabitation and their failure to address satisfactorily the problems giving rise to the boys' detention, the family court could readily have concluded there had been an insufficient change in circumstances to justify returning the boys to Mother.

**B.  *Beneficial Relationship***

Adoption is the strongly preferred permanent plan for dependent children who have not reunified with their parents.  "After reunification efforts have terminated, the focus shifts from family reunification toward promoting the best interests of the child.  A child has a fundamental interest in belonging to a family unit, which includes a 'placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' " (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 808.)  At this stage, the juvenile court must order adoption and termination of parental rights unless "one of the specified circumstances [in section 366.26, subdivision (c)(1)(B)] provides a compelling reason for finding that termination of parental rights would be detrimental to the child." (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)

The exception claimed by Mother is found in section 366.26, subdivision (c)(1)(B)(i), which authorizes the juvenile court to decline to terminate parental rights if it finds termination would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  " 'To trigger the application of the parental

relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination.' [Citation.] A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." ' " (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643 (*Marcelo B.*).) Demonstrating the child would benefit from continuing the parental relationship "requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' [Citation.] Evidence that a parent has maintained ' "frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' " (*Ibid*.)

It is the parent's burden to show the beneficial parental relationship exception applies. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1345.) There is some difference of opinion regarding the applicable standard in reviewing a juvenile court's finding on the beneficial parental relationship exception, with courts applying either the substantial evidence or abuse of discretion standards, or a combination. (See *In re K.P.* (2012) 203 Cal.App.4th 614, 621–622.) We find little practical difference in these circumstances. (See *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314–1315.)

The record holds little evidence to suggest the termination of Mother's parental rights would deprive the boys of a " '*substantial*, positive emotional attachment such that [they] would be *greatly* harmed.' " (*Marcelo B., supra,* 209 Cal.App.4th at p. 643.) While Mother and Father visited regularly, the nature of the visits did not demonstrate an unusually strong bond with the parents. The Agency's characterization suggested the boys were relatively indifferent to their parents. The monitors' reports suggested visitation involved happier, more intense interactions. Yet even these reports did not suggest the boys' relationship to their Mother was such that they would be greatly

harmed by its termination. According to the Agency, the boys did not report anxiety or regret when faced with the prospect of adoption and separation from Mother.

Mother's testimony that a "bond" had been maintained based on the boys' expressions of affection, standing alone, did not support application of the exception. Rather, this is at most an example of the type of " ' "frequent and loving contact" ' " that is insufficient to support the finding of a beneficial relationship. (*Marcelo B., supra,* 209 Cal.App.4th at p. 643.)

Mother argues the Agency's gradual reduction of the parents' visitation following the termination of reunification services violated her "due process right to prevent the termination of her parental rights." In the case she cites as authority, however, the mother was denied visitation entirely throughout the course of the dependency proceedings, thereby preventing her from any opportunity to reunify with the child. (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1501, 1505–1506.) No similar denial existed here. Ample opportunity for visitation occurred during the services period. Further, the parents continued to be permitted biweekly visits with the boys through January 2015. Only in the two months immediately preceding the section 366.26 hearing were visits reduced to once per month. There is no factual basis for the claim that Mother was prevented from demonstrating a beneficial relationship by restrictions on visitation.

## III. DISPOSITION

The juvenile court's order is affirmed.

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.